UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VLADIMIR JEANTY,

                         Plaintiff,

            -v.-

THE CITY OF NEW YORK, JANELLE
KELLY, ANTOINETTE JEAN-LOUIS,
JULIA AGREST, RYAN WANTTAJA, and
JOHN AND JANE DOES 1-10,

                         Defendants.

18 Civ. 5920 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

What happened to Plaintiff Vladimir Jeanty was the result of an
unfortunate cascade of bureaucratic failures; whether these failures amount to
a constitutional violation is the subject of the instant motion. Plaintiff,
proceeding *pro* se, filed suit against the City of New York and various
employees of the New York City Taxi and Limousine Commission ("TLC"),
alleging that TLC refused to process his timely-filed application for renewal of
his For-Hire Vehicle ("FHV") License, and in so doing violated the Due Process
and Equal Protection Clauses of the Fourteenth Amendment. Before the Court
is a motion to dismiss filed by the remaining Defendants in the case: the City of
New York, Janelle Kelly, Antoinette Jean-Louis, Julia Agrest, and Ryan
Wanttaja (collectively, "Defendants"). For the reasons stated below,
Defendants' motion is granted in full, but Plaintiff is given leave to amend his
equal protection claim if he wishes to do so.

# BACKGROUND[1]

## A. Factual Background

In August 2016, Plaintiff applied for, but was not granted, a renewal of his FHV license. (Am. Compl. ¶¶ 49-52).[2] The crux of the parties' dispute is whether Defendants wrongly, and repeatedly, denied Plaintiff's renewal application for the period spanning September 1, 2016, to March 24, 2017. (*Id.* at ¶ 105). As a result of the denial, Plaintiff lost approximately $60,000 to $75,000 in gross income (*id.* at ¶ 120) and was unable to support his family, who were then subject to eviction proceedings (*id.* at ¶¶ 122-23).

---

[1] This Opinion draws its facts primarily from the Amended Complaint ("Am. Compl." (Dkt. #7)). In addition, the Court considers several documents that are incorporated by reference and integral to the Amended Complaint: (i) the Rules of the City of New York ("RCNY"); and (ii) TLC's publicly available Industry Notice, dated October 20, 2015 ("Industry Notice"). *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the [pleading] 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

For ease of reference, the Court refers to the parties' briefing as follows: Defendants' Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #35); Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #40); and Defendants' Memorandum of Law in Further Support of the Motion to Dismiss as "Def. Reply" (Dkt. #43). In addition, the transcript of the parties' October 18, 2018 pre-motion conference with the Court is referred to as "Tr." (Dkt. #36).

[2] For-hire vehicles, as opposed to taxi cabs, "provide pre-arranged transportation throughout New York City." *For-Hire Vehicle*, NEW YORK CITY TAXI AND LIMOUSINE COMM'N, https://www1.nyc.gov/site/tlc/businesses/for-hire-vehicles.page (last visited June 3, 2019). There are four classes of FHV service in New York City, including Community Cars, Black Cars, Luxury Limousines, and High Volume For-Hire Services. *See id.* Well-known examples of for-hire vehicles include Uber and Lyft. *See How to Get TLC Plates*, UBER, https://www.uber.com/drive/new-york/get-started/tlc-plate (last visited June 2, 2019).

Plaintiff had received his initial FHV license from TLC on August 25, 2015. (Am. Compl. ¶¶ 37, 40). In January 2016, Plaintiff began driving an FHV car to supplement his income as a commercial driver. (*Id.* at ¶ 39).

On July 1, 2016, Plaintiff timely applied to renew his FHV license, which was set to expire on August 25, 2016. (Am. Compl. ¶¶ 44, 47). Prior to that date, TLC had sent Plaintiff a letter entitled "TLC Driver's License Renewal Reminder" ("Renewal Notice"), notifying Plaintiff that his FHV license would expire on August 25, 2016, unless he completed seven requirements, including the submission of a medical form. (*Id.* at ¶ 47).[3] Plaintiff timely completed all of the requirements. (*Id.* at ¶ 49).

On September 1, 2016, Plaintiff received a letter from TLC, dated August 30, 2016 (the "Supplemental Notice"), notifying Plaintiff that his FHV renewal application could not be processed due to two deficiencies in it. (Am. Compl. ¶¶ 50-51). *First*, it was claimed, Plaintiff did not "have [his] medical form completely filled out." (*Id.* at ¶ 51). *Second*, the Supplemental Notice recited, "[a]ll existing FHV drivers who received their license between March 20, 2015, and December 20, 2015 must attend [the FHV Driver Education Course] in order to renew their licenses by September 13, 2016." (*Id.*). The Supplemental Notice also stated that if Plaintiff failed to submit the necessary

---

[3]     According to the Renewal Notice, in order to renew his license, Plaintiff was required to: (i) pay a non-refundable renewal fee; (ii) update his contact information; (iii) pass a drug test; (iv) complete wheelchair-accessible training; (v) pay all New York Department of Motor Vehicle ("DMV"), Parking Violation Bureau ("PVB"), and Department of Finance ("DOF") fines; (vi) watch a sex trafficking awareness video; and (vii) submit a medical form. (Am. Compl. ¶ 47).

documentation by August 25, 2016 — five days *prior* to the date of the Notice — Plaintiff's license would not be renewed. (*Id.* at ¶ 52).

Several days later, Plaintiff called TLC and spoke to a representative who confirmed that the Supplemental Notice had been partially in error: Plaintiff had submitted a timely and complete medical form on August 24, 2016. (Am. Compl. ¶¶ 54-57). However, the representative maintained that Plaintiff's license could not be renewed until he had completed the FHV Driver Education Course ("the Course"). (*Id.* at ¶ 58). Plaintiff explained to the representative that he was not required to attend the Course because he had complied with all of the requirements outlined in the Renewal Notice, which did not include completion of the Course. (*Id.* at ¶ 63).

Whether Plaintiff was obligated to enroll in the Course in order to receive his license renewal is governed by the Title 35 of the Rules of the City of New York ("RCNY"), which title pertains specifically to the TLC. *See* 35 RCNY § 55-04(j). On January 13, 2015, TLC promulgated an amendment to the RCNY that required FHV license applicants to complete the Course and pass an examination on course topics prior to receiving an FHV license. *Id.* § 55-04(j)(2). However, when the rule went into effect on March 20, 2015, the Course was not yet available. *Id.* § 55-04(j). As a result, TLC decided that new applicants like Plaintiff, who had received his initial FHV license in August 2015 (Am. Compl. ¶ 37), would be issued a conditional FHV license, with the understanding that they would be required to complete the Course when it became available. *Id.*

By Industry Notice dated October 20, 2015, TLC publicly announced that the Course had become available. (Industry Notice #15-40). The Notice stated that both conditional FHV license holders, like Plaintiff, and new applicants would have to complete the Course in order to obtain or renew their FHV licenses. (*Id.*). Of note, conditional license holders were required to "complete the Course and pass the exam before they renew[ed] their licenses." (*Id.*). Because of the delays in implementing the course, TLC stated that it would "notify drivers of this requirement by mail at least 90 days prior to their license renewal date." (*Id.*).

Plaintiff never received the 90-day notice. (Am. Compl. ¶ 63). Instead, Plaintiff learned of the Course requirement on September 1, 2016, six days after the renewal deadline. (*Id.* at ¶¶ 51, 63). Accordingly, between September 2016 and March 2017, Plaintiff repeatedly contacted TLC to inquire about the status of his FHV license. (*Id.* at ¶¶ 54-76). During each of those conversations, TLC employees told Plaintiff that his FHV license would not be renewed without completion of the Course, despite the fact that Plaintiff had not received notice of this requirement until the deadline for renewal had passed. (*Id.* at ¶¶ 71-76).

Growing increasingly frustrated with the situation, in March 2017, Plaintiff borrowed $250 from his sister and enrolled in the Course. (Am. Compl. ¶ 96). His enrollment was not an acknowledgment of any error on his part; to the contrary, Plaintiff still believed that because the Course was not identified in the Renewal Notice, he did not need to take it. (*Id.*). However,

Plaintiff soon found himself in a "Catch-22" of TLC's making: When Plaintiff showed up to take the Course on March 24, 2017, a staff member informed Plaintiff that he needed a valid license in order to enroll in the course. (*Id.* at ¶¶ 96-97). Of course, according to Plaintiff's prior conversations with TLC employees, he needed to complete the class in order to obtain a valid license. (*Id.* at ¶¶ 71-76).

Once again confused and frustrated, Plaintiff called TLC to straighten out the situation at approximately 8:30 a.m. on March 24, 2017. (Am. Compl. ¶ 99). A TLC employee told Plaintiff he would look into the matter and would call Plaintiff back. (*Id.* at ¶ 100). Meanwhile, a staff member at the Course allowed Plaintiff to sit in on the course, despite not having a valid license. (Tr. 7:01-12). At approximately 2:34 p.m., while attending the Course, Plaintiff received an e-mail from TLC informing him that his renewal application had been approved and that he would be receiving the new license in the mail within five to seven business days. (Am. Compl. ¶ 103). At that point, Plaintiff left the Course and did not return. (*Id.* at ¶¶ 106-07). On April 5, 2017, as promised, Plaintiff received his renewed FHV license. (*Id.* at ¶ 116).

## B.   Procedural Background

Plaintiff filed his Complaint in this action on June 29, 2018 (Dkt. #1), followed by the Amended Complaint on July 10, 2018 (Dkt. #7). On September 27, 2018, Defendants requested leave to file a motion to dismiss. (Dkt. #25). Several days later, on October 3, 2018, Plaintiff voluntarily dismissed all state-law claims in the Amended Complaint, pursuant to Federal

Rule of Civil Procedure 41(a)(1)(A)(i).  (Dkt. #29-30).  On October 18, 2018, the

Court held a pre-motion conference and set a briefing schedule for Defendants'

motion to dismiss.  (Dkt. #36).  Defendants moved to dismiss the Amended

Complaint on November 14, 2018.  (Dkt. #33-35).  Plaintiff filed an opposition

brief on January 31, 2019.  (Dkt. #40).[4]  This motion became fully briefed when

Defendants filed their reply brief on February 22, 2019.  (Dkt. #43).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiffs

favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life

Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted);

*see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." (internal quotation marks

omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) ("While *Twombly* does not require heightened fact pleading of specifics, it

---

[4]    In his opposition brief, Plaintiff dismissed his claims against four Defendants:  Meera
Joshi, Aisha Richard, Jeffrey Grunfeld, and TLC.  (Pl. Opp. 34).  On April 30, 2019, the
Clerk of Court terminated those Defendants from the docket.

does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2.    The Court's Review of *Pro Se* Submissions

In light of Plaintiff's *pro se* status, the Court "afford[s] [him] a special solicitude[,]" and, in this regard, will liberally construe his pleadings and motion papers. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court is to read Plaintiff's "'submissions to raise the strongest arguments they suggest.'" *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

One expression of the Court's solicitude is its consideration of Plaintiff's memorandum in opposition and the documents attached thereto, in addition to the Amended Complaint and its well-pleaded allegations, in resolving the motion to dismiss. That is because any concern over "harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered," which is negated when the plaintiff "relie[s] heavily upon these documents in framing the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because Plaintiff had "actual notice of all the information" in these documents, the Court will consider them in assessing the sufficiency of Plaintiff's claims. *Id.*; *see also Washington* v. *James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (admonishing the district court to "give[ ] [the *pro se* plaintiff] the benefit of the doubt ... [by] treating the complaint as if it had been amended").

## B.   The Court Dismisses Plaintiff's Due Process Claims

Each of Plaintiff's remaining three claims is pleaded in the Amended Complaint's second cause of action. (*See* Am. Compl. ¶¶ 136-53).[5] The Court first considers Plaintiff's two related claims for violations of his rights to

---

[5]     In his opposition brief, Plaintiff states he is bringing a fourth "cause of action" for "emotional distress." (Pl. Opp. 6). However, Plaintiff later clarifies that he is asking the Court to "award damages for emotional suffering," and not bringing a separate claim. (*Id.* at 33). In addition, the Court notes that Plaintiff voluntarily dismissed his state-law claim for "intentional/negligent infliction of emotional distress" on October 3, 2018. (Dkt. #29-30). Accordingly, the Court does not address the issue.

procedural and substantive due process. As detailed in the remainder of this section, neither of Plaintiff's due process claims is sufficiently pleaded.

### 1. Plaintiff Has Not Sufficiently Alleged a Procedural Due Process Violation

Plaintiff alleges that Defendants' failures (i) to provide him with adequate notice of the Course requirement, and (ii) to timely renew his FHV license, amount to a violation of his right to procedural due process. (Am. Compl. ¶¶ 136-53; Pl. Opp. 9-14). Prior to considering Plaintiff's claim on the merits, the Court addresses the threshold issue of whether Plaintiff is barred from bringing it due to the availability of process under Article 78 of the New York Civil Practice Law and Rules ("CPLR"), which provides a right to appeal, in state court, a decision of a state or local agency.

Procedural due process claims fail when there is an adequate state procedure, such as an Article 78 proceeding, to remedy a deprivation of property or life. *See N.Y.S. Nat'l Org. for Women* v. *Pataki*, 261 F.3d 156, 168 (2d Cir. 2001); *Hellenic Am. Neighborhood Action Comm.* v. *City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). Defendants argue that Article 78 relief, which Plaintiff elected not to seek, provided Plaintiff with the process he was due under the Fourteenth Amendment, thereby barring his claim at this juncture. (Def. Br. 15-16).

In response, Plaintiff argues that he was unable to avail himself of the Article 78 procedures because he did not have a final agency determination. (Pl. Opp. 25). The last written communication Plaintiff received from TLC was the Supplemental Notice dated August 30, 2016, stating that his renewal

application "cannot be processed" because Plaintiff failed to submit his medical form and complete the Course. (Pl. Opp., Ex. 4). The letter also advised Plaintiff that if he did not submit the necessary documents by August 25, 2016, "your application for renewal will not be processed and you will become failed to renew." (*Id.*). After receiving that letter, Plaintiff understood that "no decision was made on my license" (Tr. 11:15), and that his application "was [just] sitting somewhere" (*id.* at 12:16-17). Accordingly, believing that he had not received a final agency determination, Plaintiff did not — because he believed he could not — seek Article 78 relief.

Defendants respond that Plaintiff's claim of no final agency determination is "devoid [of] merit." (Def. Reply 5). To support their argument, Defendants rely on *Carter* v. *State*, 95 N.Y.2d 267 (2000), in which the New York Court of Appeals found that "an agency determination is 'final' when the petitioner is aggrieved by that determination." (*Id.*). From this, Defendants reason, Plaintiff could have initiated Article 78 proceedings upon receipt of the Supplemental Notice, which indicated that his license had not been renewed. (*Id.*).

Defendants overstate *Carter*'s relevance to the issue at hand. To be clear, the Court does not suggest that Defendants misquoted the *Carter* court, which clearly stated:

> A CPLR article 78 proceeding against a public "body or officer must be commenced within four months after the determination to be reviewed becomes final and binding." (CPLR 217[1]). An agency determination is final — triggering the statute of limitations — when the

> petitioner is aggrieved by the determination (*see, Matter of Biondo* v. *New York State Bd. of Parole*, 60 N.Y.2d 832, 834, 470 N.Y.S.2d 130, 458 N.E.2d 371; *Matter of Martin* v. *Ronan*, 44 N.Y.2d 374, 380-381, 405 N.Y.S.2d 671, 376 N.E.2d 1316).

*Carter*, 95 N.Y.2d at 270.  However, Defendants overlook other language from *Carter* that clarifies *when* a court can determine that an agency's review was final:

> A petitioner is aggrieved once the agency has issued an unambiguously final decision that puts the petitioner on notice that all administrative appeals have been exhausted. If an agency has created ambiguity or uncertainty as to whether a final and binding decision has been issued, "'the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court.'" (*Mundy* v. *Nassau County Civ. Serv. Commn.*, 44 N.Y.2d 352, 358, 405 N.Y.S.2d 660, 376 N.E.2d 1305 (quoting *Matter of Castaways Motel* v. *Schuyler*, 24 N.Y.2d 120, 126-127, 299 N.Y.S.2d 148, 247 N.E.2d 124, *adhered to on rearg.* 25 N.Y.2d 692, 306 N.Y.S.2d 692, 254 N.E.2d 919)).

*Id.*

Under the *Carter* standard, the Supplemental Notice was not a final and binding determination.  Although the Notice indicated that Plaintiff's renewal application might be denied in the future, the language was ambiguous as to whether a final decision had already been rendered.  Instead, the Notice merely stated that Plaintiff's application "will not be processed." (Pl. Opp., Ex. 4). Plaintiff never received a further notice indicating that TLC had made a final decision — for example, stating that the agency was denying his application for a renewal.  Given the inherent uncertainty in the Supplemental Notice,

Plaintiff's last formal communication with the agency, the Court is obligated, under *Carter*, to resolve the ambiguity in favor of Plaintiff and proceed to a consideration of the merits.

In order for his procedural due process claim to survive, Plaintiff must first allege that he has been deprived of a liberty or property interest that is subject to due process protection. *See Bd. of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 569-70 (1972). Here, Plaintiff's claim turns on his ability to demonstrate that he has such an interest in the renewal of his FHV license, and that TLC "deprived him of [that] protected property interest." *Spinelli* v. *City of New York*, 579 F.3d 160, 168 (2d Cir. 2009).[6]

"Although the Second Circuit does not appear to have directly addressed the issue of a property interest in a license renewal application," sister courts in this District have found that "[w]hether a [renewal] applicant for a license has a legitimate claim of entitlement to the license depends on the degree of discretion enjoyed by the issuing authority." *Spanos* v. *City of New York*, No. 15 Civ. 6422 (LTS), 2016 WL 3448624, at *2 (S.D.N.Y. June 20, 2016),

---

[6]    Plaintiff argues that the relevant inquiry is not whether he had a property interest in the renewal of his FHV license, but whether the revocation of his perfectly valid license violated his right to procedural due process. (Pl. Opp. 11-12). Although Plaintiff appears to be making an argument that his license was suspended or revoked, the Amended Complaint clearly alleges that Plaintiff was applying for a *renewal* of his FHV license. (Am. Compl. ¶¶ 2-4, 44, 47-49). The Supplemental Notice from TLC to Plaintiff confirms that Plaintiff was seeking a license renewal. (Pl. Opp., Ex. 4). *See Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." (citations omitted)). Thus, because Plaintiff was only attempting to renew a license that had not been suspended or revoked prior to its expiration, the Court's analysis of the property right focuses on the degree to which the TLC had discretion to refuse the renewal, as discussed later in the text.

*aff'd*, 672 F. App'x 124 (2d Cir. 2017) (summary order); *see also N.Y.S. Prof'l Process Servers Ass'n, Inc.* v. *City of New York*, No. 14 Civ. 1266 (DLC), 2014 WL 4160127, at *8 (S.D.N.Y. Aug. 18, 2014), *aff'd sub nom. Clarke* v. *de Blasio*, 604 F. App'x 31 (2d Cir. 2015) (summary order). If the issuing authority — here, TLC — lacks discretion to deny the permit and "there is either a certainty or a very strong likelihood that the application would have been granted," Plaintiff will have demonstrated a "legitimate claim of entitlement," and property interest in, the renewal of his license. *Ace Partners, LLC* v. *Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir.), *cert. denied sub nom. Ace Partners, LLC* v. *Town of E. Hartford, Conn.*, 139 S. Ct. 122 (2018). Conversely, if TLC exercises discretion in the renewal process, the granting of the renewal application is not a foregone conclusion, and no property interest exists in the license, thereby barring a procedural due process claim. *See id.*

The RCNY affords TLC, as the licensing authority, broad discretion to grant or deny license renewal applications. Specifically, Section 55-05, which governs probationary licenses, enumerates a list of discretionary factors to be considered:

> Upon approval of an Applicant for a new For-Hire Driver's License, [TLC] will issue a Probationary License valid for one year. At the end of the one-year probationary period, [TLC] will evaluate the Applicant and determine if renewing the License is appropriate. To take this decision, [TLC] will consider the Applicant's driving record, any violation of the For-Hire Drivers

> Rules, or other evidence that suggest that the Driver no
> longer meets all requirements for a License.

35 RCNY § 55-05(a)(1-3).  While Plaintiff argues that the RCNY lists only

objective requirements for renewal, the Second Circuit's decision in

*Mordukhaev* v. *Daus*, 457 F. App'x 16 (2d Cir. 2012) (summary order),

persuasively argues to the contrary.  *Mordukhaev* concerned the alleged

property interest of taxicab drivers in their taxicab licenses.  *See id.* at 19-20.

In particular, the *Mordukhaev* plaintiffs alleged that TLC lacked discretion to

deny a license due to purportedly objective requirements for licensure in the

relevant New York City regulations.  *See id.* at 19.  The Second Circuit

disagreed and held that, although the relevant statutory and regulatory

framework provided requirements for licensure, those requirements themselves

afforded TLC a degree of discretion.  For example, TLC evaluated an applicant's

"driving record," "knowledge of the city," and "good moral character," when

considering a license for renewal.  *Id.* at 20.

    Here, the RCNY contains similarly subjective criteria.  Section 55-05

allows TLC to consider an applicant's "driving record," as well as "all

requirements for a License."  35 RCNY § 55-05(a)(1-3).  Among the licensing

requirements is an assessment of a candidate's "familiar[ity] with geography,"

similar to *Mordukhaev*'s "knowledge of the city."  *Id.* § 55-04(f).  In addition,

akin to the "good moral character" requirement in *Mordukhaev*, the licensing

requirements include "fitness for the job."  *Id.*  These criteria are clearly

subjective, and demonstrate that TLC retains a significant amount of discretion

when evaluating renewal applications. On their own, they would be enough for this Court to find that Plaintiff does not have a property interest in the renewal of his license.

However, the RCNY also affords TLC additional discretion to grant or deny a renewal application under its broad "fit to hold" requirement, which provides that:

> The Chairperson will deny the original *or renewal* License of any Applicant who fails to demonstrate that the Applicant is Fit to Hold a License. The Chairperson will inform the Applicant, in writing, of the specific reason(s) for this denial. The decision to deny a license Application *is in the discretion of the Chairperson.*

35 RCNY § 55-08 (emphases added). This language confers unfettered discretion on TLC, "indicating clearly that renewal is not a presumptive or automatic matter." *Spanos*, 2016 WL 3448624, at *3.

Somewhat incongruously, Plaintiff argues that the "fit to hold" requirement is "inapplicable to this matter" (Pl. Opp. 14), because "[t]he Chairperson's discretionary power is not relevant in the license renewal process" (*id.* at 11). Instead, Plaintiff argues, the Chairperson's discretion is "narrowly circumscribed" to reviews of the applicant's criminal history and driving records, neither of which occurs at the renewal stage. (*Id.* at 11, 14). Plaintiff, however, is incorrect. *First*, the plain language of Section 55-08 states that the "fit to hold" requirement applies to "the original *or renewal* License of any Applicant." 35 RCNY § 55-08 (emphasis added). *Second*, even if the Court were to credit Plaintiff's assertion that the Chairperson's discretion is cabined

to certain circumstances, an applicant's criminal history is also considered when his or her license is up for renewal. *Id.* § 55-04(h)(2) ("The criminal history of any Applicant, including a renewal Applicant, will be reviewed in a manner consistent with Article 23-A of the New York State Correction Law.").

Accordingly, because TLC has discretion to grant or deny the renewal of a probationary license, Plaintiff's procedural due process claim must be dismissed.[7]

## 2. Plaintiff Has Not Sufficiently Alleged a Substantive Due Process Violation

Also in the Amended Complaint's second cause of action, Plaintiff asserts a substantive due process claim. (Am. Compl. ¶¶ 136-53; Pl. Opp. 26-31).

---

[7]  In his opposition brief, Plaintiff argues — for the first time — that the provisions of the RCNY relating to whether, and when, Plaintiff should comply with the Course requirement are "confusing, multiplicitous and therefore vague," in violation of the Due Process Clause. (Pl. Opp. 17). The Supreme Court has held that "[a] statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill* v. *Colorado*, 530 U.S. 703, 732 (2000). The Court construes Plaintiff's arguments as bringing both types of vagueness challenges — commonly referred to "facial" and "as-applied" — and disposes of these ancillary claims in short order.

The relevant inquiry for Plaintiff's facial challenge to the RCNY is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Rubin* v. *Garvin*, 544 F.3d 461, 467 (2d Cir. 2008). Because the RCNY does not implicate a constitutional right, or impose criminal penalties, the regulation is subject to a relaxed vagueness test. *See VIP of Berlin, LLC* v. *Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010). Here, the RCNY clearly set forth the licensing structure and the requisite qualifications for individuals seeking renewal of their provisional licenses. 35 RCNY § 55-04(j)(2). Specifically, the regulation outlined the requirement that FHV license holders would be required to complete the Course prior to the renewal of their license. *Id.* § 55-04(j). That requirement was also posted on TLC's website, when the Course became available. (Industry Notice #15-40). TLC's failure to send further notification of the requirement 90 days prior to Plaintiff's renewal deadline, while unfortunate, does not render the RCNY provisions unconstitutionally vague. On the contrary, when Plaintiff applied for his license renewal the requirements for renewal were clearly laid out in the RCNY.

Specifically, Plaintiff asserts that Defendant Kelly, a TLC employee, knowingly and irrationally took a series of actions to prohibit Plaintiff from receiving his license renewal. (Pl. Opp. 27-28). First, "with no authority," Defendant Kelly issued the Supplemental Notice, notifying Plaintiff that his renewal application would not be processed. (*Id.* at 27). Next, Defendant Kelly required Plaintiff to provide his medical certificate, despite knowing that Plaintiff had already fulfilled that requirement. (*Id.*). Finally, Defendant Kelly, acting without proper authority, surreptitiously added a requirement for Plaintiff's license renewal — the completion of the Course. (*Id.*).

To state a violation of his substantive due process rights, Plaintiff must sufficiently allege that (i) he had a valid property interest in the renewal of his FHV license; and (ii) Defendants infringed on that property right in an arbitrary or irrational matter. *See 49 WB, LLC* v. *Vill. of Haverstraw*, 511 F. App'x 33, 34 (2d Cir. 2013) (summary order); *accord Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of New York*, 746 F.3d 538, 545 (2d Cir. 2014). Therefore, the Court's dismissal of Plaintiff's procedural claim necessarily disposes of his substantive due process claim. *See Mordukhaev*, 457 F. App'x at 18 ("For Plaintiffs to prevail on their due process claims — whether

---

The Court resolves Plaintiff's "as applied" challenge by determining "whether the law provides explicit standards for those who apply it." *Farrell* v. *Burke*, 449 F.3d 470, 486 (2d Cir. 2006). "Although a law has to provide minimal guidelines in the form of explicit standards regarding what the law requires, it need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *Clavin* v. *Cty. of Orange*, 620 F. App'x 45, 48-49 (2d Cir. 2015) (summary order). Here, the RCNY provides a standard that can be applied to determine whether a conditional license holder should be renewed, *see* 35 RCNY § 55-04(a)(1-3), and the relevant provisions do not encourage arbitrary or discriminatory decisionmaking. Accordingly, Plaintiff's vagueness challenges fail.

procedural or substantive — arising from the denial of their applications for taxicab licenses, they must first demonstrate that they have a valid property interest in receiving a license."). Plaintiff does not have a property interest in the renewal of his FHV license sufficient to support a procedural, or a substantive, due process claim. *See Clubside, Inc.* v. *Valentin*, 468 F.3d 144, 152 (2d Cir. 2006). Accordingly, the Court dismisses both of Plaintiff's due process challenges.

## C.     The Court Dismisses Plaintiff's Equal Protection Claim

Finally, Plaintiff brings an equal protection claim. (Am. Compl. ¶¶ 136-53). The Equal Protection Clause of the Fourteenth Amendment is a mandate that all similarly-situated individuals be treated alike. *See City of Cleburne* v. *Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Artec Constr. & Dev. Corp.* v. *N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 15 Civ. 9494 (KPF), 2017 WL 782911, at *2 (S.D.N.Y. Feb. 27, 2017) (quoting *Harlen Assocs.* v. *Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). An individual may assert either a "class of one" or "selective enforcement" equal protection claim. *Id.*

Plaintiff rests his claim on a "class of one" theory. (Am. Compl. ¶¶ 136-53; Pl. Opp. 32 ("The [Amended Complaint] as a whole makes clear that

Plaintiff is pleading a 'class of one' claim.")).  To prevail, he must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  *Neilson* v. *D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel* v. *Spiridon*, 531 F.3d 138 (2d Cir. 2008).

Put differently, Plaintiff "must allege that the intentional disparate treatment alleged to state the first element of the claim was wholly arbitrary or irrational."  *Panzella* v. *City of Newburgh*, 231 F. Supp. 3d 1, 7 (S.D.N.Y.), *aff'd*, 705 F. App'x 50 (2d Cir. 2017) (summary order).  In addition, to proceed under this theory, Plaintiff must "show an extremely high degree of similarity between [himself] and [his] comparators."  *Fortress Bible Church* v. *Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).  Post-*Iqbal*, the Second Circuit has held that a complaint must make sufficient factual allegations in support of the similarity requirement in order to survive a motion to dismiss.  *See Ruston* v. *Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).  Courts require "more than a bare allegation that other individuals were treated differently."  *Vaher* v. *Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 435 (S.D.N.Y. 2013).

Even with a liberal reading of the Amended Complaint, the Court finds that Plaintiff does not satisfy this showing.  To begin, although Plaintiff alleges that Defendants acted "without following any logical or outlined process or

procedure" (Am. Compl. ¶ 137), and did not provide Plaintiff with a "clear explanation" for the renewal denial (*id.* at ¶ 140), the Amended Complaint is devoid of factual allegations — or even legal conclusions — that individuals who were similarly situated to Plaintiff were treated differently.

In his opposition brief, Plaintiff argues that other individuals with conditional FHV licenses were notified of the Course requirement at least 90 days prior to the expiration of their licenses (Pl. Opp. 33), while Plaintiff "was singled out with no rational basis" (*id.* at 32). The Court, with appropriate solicitude for Plaintiff's *pro se* status, considers these supplemental allegations. *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). However, even these additional allegations are too conclusory to satisfy *Twombly's* plausibility standard. Plaintiff has not identified any individual who was highly — or indeed at all — similar in characteristics and different in treatment to Plaintiff. Instead, Plaintiff has proffered the legal conclusion that he is similarly situated to a putative group of individuals who allegedly received proper notice. Furthermore, Plaintiff has not sufficiently alleged that there was no rational basis for any difference in treatment. On these facts, Plaintiff's class of one claim in violation of the Fourteenth Amendment cannot stand.[8]

---

[8]     Plaintiff has failed to demonstrate the existence of an underlying constitutional violation, thereby precluding a *Monell* claim against the City. *See Bobolakis* v. *DiPietrantonio*, 523 F. App'x 85, 87 (2d Cir. 2013) (summary order) (affirming dismissal of *Monell* claims where plaintiff "suffered no violation of his constitutional rights [and as such] there is no basis for imposition of liability on the Town" (citing *Segal* v. *City of*

**D.      The Court Will Grant Plaintiff Leave to Amend His Equal Protection Claim Only**

The remaining issue is whether the Court's dismissal of Plaintiff's Amended Complaint should be with or without prejudice.  Plaintiff asks the Court for leave to amend (Pl. Opp. 34-35), and here, too, the Court must construe the record as broadly in favor of Plaintiff's claims as the facts will permit.  *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("'A *pro se* complaint is to be read liberally.  Certainly, the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (internal citation omitted)).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects.  *See Asensio* v. *Roberts*, No. 19 Civ. 3384 (KPF), 2019 WL 1877386, at *4 (S.D.N.Y. Apr. 26, 2019).  Moreover, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block* v. *First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).  When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile.  *See Foman* v. *Davis*, 371 U.S. 178, 182 (1962); s*ee*

_____

*New York*, 459 F.3d 207, 219 (2d Cir. 2006))).  Accordingly, Plaintiff's seventh cause of action in the Amended Complaint is dismissed.

*also Gormin* v. *Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 35020, at *1 (S.D.N.Y. Jan. 6, 2009) (granting motion).

Here, as it concerns Plaintiff's due process claims, the Court has determined that Plaintiff does not have a property interest in the renewal of his FHV license. Therefore, amendment of those claims would be futile. Accordingly, the Court denies Plaintiff leave to amend his substantive and procedural due process claims and dismisses those claims with prejudice.

However, the Court cannot exclude the possibility that Plaintiff can plead a viable equal protection claim. The Court's dismissal of this claim hinges on Plaintiff's failure to allege specific facts indicating that individuals who were highly similar to himself were treated differently by TLC and its employees. This defect may be remedied with an amendment. In addition, there is nothing in the record to suggest any unwarranted delay or lack of diligence on the part of Plaintiff, nor any improper motive behind Plaintiff's request to amend. Allowing Plaintiff to amend once more will not cause prejudice to Defendants, in a case where discovery has not yet commenced. For those reasons, the Court grants Plaintiff a final opportunity to amend his equal protection claim, as well as his accompanying *Monell* claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety. Specifically, Plaintiff's due process claims are DISMISSED WITH PREJUDICE. Plaintiff's equal protection claim is DISMISSED WITHOUT PREJUDICE to amendment. The Clerk of Court is directed to terminate the

motion at Docket Entry 33, and modify the caption as shown above, to reflect the current Defendants.

   If he wishes to do so, Plaintiff may file a second amended complaint in accordance with this Order on or before June 28, 2019. The Court cautions Plaintiff not to attempt to re-plead those claims that have been dismissed with prejudice, and to focus on re-pleading his equal protection claim. If Plaintiff files a second amended complaint in accordance with this Opinion, the Court directs Defendants to answer or otherwise respond to that complaint within thirty (30) days of receipt.

   SO ORDERED.

Dated:  June 3, 2019
        New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge